UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  24-CV-81492-DSL

VALLEY NATIONAL BANK,
d/b/a AGILE PREMIUM FINANCE,

                Plaintiff,

vs.

WAYNE JENKINS,
TRAVELPLUS PROMOTIONS, LLC,
VENTURE PLUS PROMOTIONS, LLC,

                Defendants.

_____/

## REPORT AND RECOMMENDATION ON MOTION FOR DEFAULT JUDGMENT [ECF No. 61]

Plaintiff Valley National Bank d/b/a Agile Premium Finance ("Agile") moves for a final default judgment against Wayne Jenkins, Travel Plus Promotions, LLC, and Venture Plus Promotions, LLC on all counts of the Complaint. ECF No. 61. It is RECOMMENDED that the motion be GRANTED IN PART and DENIED IN PART.

## I.      BACKGROUND

This case involves alleged nonpayment of a loan and diversion of loan funds. The lender, Agile, brings claims for breach of contract (Counts I and II), unjust enrichment (Count III), Fraud (Count IV), Civil Conspiracy (Count V), Aiding and Abetting Fraud (Count VI), and Declaratory Judgment (Count VII).  ECF No. 1. Agile

asks for compensatory damages, punitive damages, fees, costs, and prejudgment interest. *Id*. at 15-16.

The Complaint was properly served on each Defendant. ECF Nos. 6 (Jenkins), 14 (Travel Plus), 15 (Venture Plus). Clerk's defaults were entered against all three. ECF Nos. 10 (Jenkins), 27 (Travel Plus), 28 (Venture Plus).[1] Agile now moves for a final default judgment. I took the matter under advisement and asked Agile to respond to several issues. ECF No. 67. I have reviewed Agile's Supplement to its Motion for Default Judgment. ECF No. 70. I held a final hearing on September 10, 2025.

## II.    DEFAULT JUDGMENT

After entry of a clerk's default, the court may enter default judgment against the defendant. Fed R. Civ. P. 55(b)(2). When default judgment is entered, "the defendant 'admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'" *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

A court must review the sufficiency of the complaint before determining whether a moving party is entitled to default judgment pursuant to Rule 55(b). *See*

---

[1] The Complaint named a fourth defendant, Dutta Horse Transportation, Inc. The claims against Dutta have been voluntarily dismissed. ECF No. 66.

*United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006) (citing *Nishimatsu*, 515 F.2d at 1206). The Eleventh Circuit has explained that this standard is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015). "'While a complaint . . . does not need detailed factual allegations,' a plaintiff's obligation to provide the grounds of his entitlement to relief 'requires more than labels and conclusion, and a formulaic recitation of the elements of the cause of action will not do.'" *Fernandez de Cordoba v. Flores*, No. 17-cv-20122, 2018 WL 1830805, at *2 (S.D. Fla. Jan. 10, 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), *report and recommendation adopted*, 2018 WL 1811945 (S.D. Fla. Feb. 9, 2018).

Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557 (bracket in original)). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550 U. S. at 555 (citations omitted).

"To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U. S. at 570). In addition, "courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Assoc. v. Cigna Corp.*, 605 F. 3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal*, 556 U. S. at 682). "Where a complaint pleads facts that are 'merely

3

consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Iqbal,* 556 U. S. at 678 (quoting *Twombly,* 550 U. S. at 557).

When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U. S. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* If the factual allegations in a complaint are inconsistent with its exhibits, the exhibits control. *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019).

"[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton v. Mass. Mut. Life Ins. Co.,* 402 F.3d 1267, 1278 (11th Cir. 2005) (alteration omitted) (quotation marks omitted) *cited in Surtain,* 789 F.3d at 1245. "Thus, before entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer,* 218 F. App'x 860, 863 (11th Cir. 2007) (citations omitted).

4

If the admitted facts are sufficient to establish liability, the Court must then turn to the question of relief. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1364 n.27 (11th Cir. 1997). After ascertaining the appropriate damages, the Court must enter final judgment. *Salerno v. TopDoc Clinics Miami, LLC*, No. 23-cv-23882, 2024 WL 2277794, at *5 (S.D. Fla. Apr. 30, 2024) (citation omitted), *report and recommendation adopted*, 2024 WL 2273374 (S.D. Fla. May 20, 2024). The default judgment cannot "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The Court can consider evidence outside the admitted allegations in the complaint only "when, to enter or effectuate judgment, it needs to:

    (A) Conduct an accounting

    (B) Determine the amount of damages

    (C) Establish the truth of any allegation by evidence; or

    (D) Investigate any other matter."

Fed. R. Civ. P. 55(b)(2).

Agile has not requested an evidentiary hearing to supplement the record.

### III.    WELL-PLED FACTS

Wayne Jenkins is the sole member of CaptiveOne Services, LLC. CaptiveOne is the sole member of Venture Plus Promotions, LLC, which in turn is the sole member of Travel Plus Promotions, LLC. ¶¶6, 7.[2] Travel Plus and Venture Plus offer

---

[2] Unless otherwise noted, citations to "¶" are to the Complaint, Docket Entry 1.

services to equestrians, including transporting horses and equipment. ¶¶ 15, 16. Dutta Horse Transportation, Inc. is a client of Travel Plus; Dutta transports horses and equipment by air. ¶17. Dutta purchases insurance to cover damage or injury that might occur in transit. ¶18. It uses short-term financing to pay the insurance premiums. ¶19.

In or about June 2023, Agile agreed to finance insurance for Dutta. ¶22. The financing was governed by a written Premium Financing Agreement (PFA) in the amount of $231,759.75. ¶23.; ECF No. 1-5. The PFA listed Dutta as the "Borrower (Insured)", Venture Plus as the "Agency" and Travel Plus as the "Managing General Agency." *Id*. Mr. Jenkins signed the PFA as "owner, Travel Plus" and on behalf of the agent or broker:

|  |  |
|---|---|
| _Signature of Insured_ | _Signature of Agent or Broker_ |
| OWNER TRAVELPLUS    6-11-23 |    6-11-23 |
| Title        Date | Title        Date |
| Page 1 of 3 | |

*Id*. Dutta did not sign the PFA. Separately, Mr. Jenkins and CaptiveOne guaranteed the loan. ECF No. 1-6 ("Guaranty Agreement").

The PFA called for Agile to advance funds and for Dutta and/or Travel Plus and/or Venture Plus to repay the loan with interest and other finance charges. ¶28; ECF No. 1-5 at 2. Travel Plus and Venture Plus served as intermediate agents under the PFA. ¶21. In that capacity, they were to directly receive advances under the PFA, obtain insurance for Dutta, and coordinate payment with the insurance company. ¶¶20, 21. The PFA contained an Agent or Broker Warranty where Venture Plus and

6

Travel Plus warranted "that any amount received by the agent or broker from Agile Premium Finance will be properly forwarded to the insurance company or companies." ECF No. 1-5 at 2; *see also* ¶¶30, 47.

Agile disbursed funds under the PFA to Travel Plus and/or Venture Plus. ¶29. The disbursed funds were not used to pay Dutta's insurers. ¶¶43, 48. The first repayment was due on July 1, 2023. ¶35. Subsequent payments were due on the first of each month. *Id*. No repayments have been made. ¶39. As of October 2023, the amount due and owing under the PFA is $221,417.82, inclusive of finance charges, but not including late charges and costs of collection. ¶38.

## IV.    CLAIMS

### A. Count I

Count I alleges that Venture Plus, Travel Plus, and Mr. Jenkins breached the PFA. Agile is entitled to default judgment on Count I against Travel Plus and Venture Plus, but not against Mr. Jenkins.

"'The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages.'" *Cibran Enter., Inc. v. BP Prod. N. Am., Inc.*, 365 F. Supp. 2d 1241, 1254 (S.D. Fla. 2005) (quoting *Abbott Labs., Inc. v. GE Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000)).  All of these elements are satisfied as to Venture Plus and Travel Plus.[3]

---

[3] The Guaranty Agreement says it "is governed by the laws of the State of Michigan." ECF No. 1-6 at 2. Michigan's breach of contract law is materially the same as Florida's. *See Bank of Am., N.A. v. First Am. Title Ins. Co.,* 499 Mich. 74, 100; 878

The PFA is appended to, and incorporated into, the Complaint. ECF No. 1-5. It is a writing, signed by Mr. Jenkins as "Owner, Travel Plus" and as "Agent or Broker" (i.e., Venture Plus). Under the terms of the PFA, Agile agreed to give money to Travel Plus and/or Venture Plus. ¶29. Travel Plus and Venture Plus warranted in the PFA that the money would only be used to pay for Dutta's insurance premiums. ¶¶30, 48. Travel Plus and Venture Plus also promised in the PFA that it would repay Agile over time, including interest and finance charges. ¶¶28, 49; ECF No. 1-5 at 2.

Agile performed under the terms of the PFA by advancing funds to Venture Plus and Travel Plus. ¶¶ 29, 51. Venture Plus and Travel Plus breached the PFA by not using the advanced funds to pay the insurers. ¶¶43, 48. Separately, Travel Plus and Venture Plus breached the PFA by failing to make repayments. ¶¶35, 39, 52. As a result of Defendants' breach of the PFA, Agile has suffered damages. It therefore is entitled to a judgment for contractual damages against the parties to the PFA.

Agile is not entitled to a default judgment against Mr. Jenkins on Count I because it has not shown that Mr. Jenkins, in his individual capacity, was a party to the PFA. The Complaint alleges (and the PFA confirms) that the parties to the PFA were Agile (Lender), Dutta (Borrower), Venture Plus (Borrower's Agent), Travel Plus (Broker's Managing General Agency), and Jenkins (Guarantor). ¶24. It says Mr. Jenkins signed the PFA on behalf of Travel Plus and Venture Plus, and as Dutta's agent. ¶¶25-26. In sum, Agile has not met its burden of showing that Mr. Jenkins,

---

N.W.2d 816 (2016) (listing elements of breach of contract under Michigan law).

individually, undertook any duties under the PFA.[4] There is no mention in the PFA of a guarantor. Mr. Jenkins' legal duties as a guarantor arise under the Guaranty Agreement, a different document that is not incorporated into the PFA.

### B. Count II

Count II alleges that Mr. Jenkins breached the Guaranty Agreement. Default judgment is proper against Mr. Jenkins on Count II. The Guaranty Agreement is a written agreement and is incorporated into the Complaint. ECF No. 1-6.

In return for Agile agreeing to fund Dutta's insurance, Jenkins individually executed the Guaranty Agreement where he guaranteed the obligations and liabilities of Travel Plus and Venture Plus under the PFA. *Id.*; ¶57; Specifically, Jenkins agreed to pay all balances for all accounts financed with Agile in the event of a default under the terms of the PFA. ¶58. As discussed above, the parties to the PFA defaulted on their obligations. Jenkins has not paid the money owed to Agile. ¶60. As a result of failure to pay, Agile has been damaged.

### C. Count III

Agile concedes that it cannot receive a judgment on Count III if it gets a judgment on Counts I and II. ECF No. 70 at 3. *See, e.g., Ocean Commc'ns, Inc. v. Bubeck,* 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 2007) ("[A] plaintiff cannot pursue

---

[4] As discussed more fully below, Agile has not shown that the corporate veil should be pierced or that Mr. Jenkins is the alter ego of either Travel Plus or Venture Plus.

an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists.").

### D. Count IV

In Count IV, Agile asserts a claim against Mr. Jenkins, Travel Plus and Venture Plus for fraud in the inducement. To state a claim for fraud, a plaintiff must allege: "(1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation." *Bailey v. Covington*, 317 So. 3d 1223, 1228 (Fla. Dist. Ct. App. 2021). The material misrepresentation must be about "a past or existing fact, not a promise to do something in the future," *Costa Investors, LLC v. Liberty Grande, LLC,* 353 So. 3d 627, 632 (Fla. Dist. Ct. App. 2022) (cleaned up), unless "the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform." *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. Dist. Ct. App. 2001).

A corporate officer or director can be held liable for fraudulent acts of the corporation if the officer/director actively participates in the fraud. *Costa, supra,* at 633-34. "Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner ... not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer." *Id.* at 634. *See also Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1118 (Fla. 1984) ("[W]here stockholders enter into a transaction in individual interests and utilize corporate

10

name merely to mislead creditors or perpetrate fraud, legal entity will be ignored and stockholders held individually liable.").

"It is a fundamental, long-standing common law principle that a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract." *Island Travel & Tours, Co. v. MYR Indep., Inc.,* 300 So. 3d 1236, 1239 (Fla. Dist. Ct. App. 2020). "This principle only applies, however, to the parties to the contract." *Un2jc Air 1, LLC v. Whittington*, 324 So. 3d 1, 3 (Fla. Dist. Ct. App. 2021).

Count IV alleges two material misrepresentations, both of which involve non-performance of the terms of the PFA. First, the PFA contained an express warranty that Venture Plus and Travel Plus would only use the advanced funds to purchase insurance for Dutta. ¶30. Second, the PFA contained an express requirement that Travel Plus and/or Dutta would "repay the amount so advanced, plus interest and other finance charges." ¶28. The Complaint says that the Defendants misrepresented that they would comply with these future obligations. Specifically, it pleads:

- Mr. Jenkins made the representation "on behalf of ShowPlus [sic] and TravelPlus, and as agent for Dutta, that the funds advanced by Agile for Dutta's insurance policies would be paid back according to the terms set forth in the PFA." ¶41.

- Defendants "misappropriated the money intended for Dutta's insurance premiums." ¶43.

- Defendants represented that the funds would be used to pay insurance premiums, but did not use them for that purpose. ¶72.

11

- Travel Plus agreed to make monthly repayments. ¶73.

- No repayments have been made. ¶39.

Citing paragraph 72, Agile argues that the independent tort doctrine does not apply because the Defendants made representations before the PFA was signed. ECF No. 61 at 16. I disagree. That paragraph is silent as to when the alleged misrepresentations were made. As such, it does not plausibly allege that the misrepresentations predated the PFA. Because Count IV alleges non-compliance with the express terms of the PFA, it does not state a claim against the parties to the PFA.

As noted above, it is not clear that Mr. Jenkins is a party to the PFA, so the independent tort doctrine may not apply to him. Even if it does not apply, Count IV independently fails to state a claim against him because it relates to future actions and does not plausibly allege that he made the misrepresentations "with no intention of performing or with a positive intention not to perform" under the PFA. Paragraph 74 alleges the misrepresentations "were false when made and were known to be false when made." ¶74. Paragraph 75 says Mr. Jenkins, Travel Plus, and Venture Plus "had no intention of utilizing the funds for the agreed purpose." ¶75. It further alleges that "the fact that the funds were never transferred to Dutta's insurance companies demonstrates intent to use the funds beyond what was represented to Agile." *Id.* The first two allegations are naked assertions devoid of further factual enhancement. The last allegation is equally consistent with the Defendants deciding to breach the PFA *after* they signed it. So, because it is merely consistent with a theory that Defendants

intended to breach the PFA before they signed it, Paragraph 75 does not plausibly allege fraud liability against Mr. Jenkins as a non-party to the PFA.

For all these reasons, Count IV does not state a claim for fraud.

*E. Count V*

In Count V, Agile asserts a claim for civil conspiracy against all three Defendants. To establish such a claim, Agile must plead: (a) an agreement between two or more parties; (b) to do an unlawful act or to do a lawful act by unlawful means; (c) the doing of some overt act in pursuance of the conspiracy; and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy. *Love v. Jackson*, 2015 WL 11237645, at *6 (S.D. Fla. Oct. 22, 2015). Here, the alleged unlawful act is the fraud alleged in Count IV. This claim fails for at least two reasons. First, as discussed above, there is no plausible allegation of a fraud. Second, all of the allegations of a conspiratorial agreement are naked assertions devoid of factual development. *See* ¶¶ 81-84, 86.

Moreover, even if these two grounds did not preclude a default judgment on Count V, there is not a plausible allegation of a conspiracy. Under the intracorporate conspiracy doctrine, Mr. Jenkins, Venture Plus, and Travel Plus cannot conspire with each other:

> That doctrine forecloses an "actionable conspiracy between an entity and its officers or agents." *Hoon v. Pate Const. Co.*, 607 So. 2d 423, 430 (Fla. 4th DCA 1992). This is because "[a] conspiracy requires the combination of two or more persons—a meeting of two independent minds intent on one purpose." *Cedar Hills Props. Corp. v. E. Fed. Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 1991). Where corporate agents are acting within the scope of their employment, their actions "are

13

> attributed to the corporation itself, thereby negating the multiplicity of actors needed for a conspiracy." *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1325 (M.D. Fla. 2016).

*Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 652 (Fla. Dist. Ct. App. 2020).

Agile's supplemental memorandum says that the conspiracy included Dutta, so the intracorporate conspiracy doctrine does not apply. ECF No. 70 at 5. The only allegations about Dutta are that Mr. Jenkins, as Dutta's agent, made representations to Agile and then failed to live up to those representations. To the extent Mr. Jenkins was acting as Dutta's agent, he cannot conspire with Dutta because of the intracorporate conspiracy doctrine. In any event, the Complaint fails to allege that Dutta entered into a conspiratorial agreement. There are no well-pled facts showing that Dutta knew about the PFA, let alone that it knew Mr. Jenkins intended to divert the funds from the PFA. Moreover, there is no allegation that Dutta received any funds or directed how those funds would be used.

### F. Count VI

Agile asserts a claim for aiding and abetting fraud (Count VI). "Florida courts have presumed that a tort claim for aiding and abetting fraud has three elements: (1) the existence of an underlying fraud; (2) that the defendant had knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the commission of the fraud." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1097-98 (11th Cir. 2017) (internal citation and quotation marks omitted). The

Complaint fails to allege an aiding and abetting cause of action because it fails to plausibly allege an underlying fraud.

    *G. Count VII*

    Finally, in Count VII, Agile seeks a declaratory judgment that "Jenkins is the alter ego of Travel Plus and Venture Plus, and therefore, Travel Plus and Venture Plus's corporate veil is subject to piercing, making Travel Plus and Venture Plus liable and accountable for its alter ego's improper, fraudulent, and unlawful conduct described herein." ¶101.

    Agile agrees that federal law applies to Count VII. ECF No. 70 at 6 n.2. The Declaratory Judgment Act provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. "[A] declaratory judgment serves to clarify the legal relations and is not for the purpose of making factual determinations." *Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011).

    The Court has "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995), *cited in MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007). That discretion is "exceptionally broad." *Otwell v. Alabama Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014). The Declaratory Judgment Act "confers a discretion on the courts rather than an absolute right upon the litigant. When all is said and done, ... 'the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its

fitness informed by the teachings and experience concerning the functions and extent of federal judicial power.'" *Wilton*, 515 U.S. at 287 (citations omitted).

> Consistent with the foregoing precepts, the Eleventh Circuit has affirmed a district court's discretion to "decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties." *Ven–Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982) (citations omitted). A district court can abuse its discretion if it: "(1) fails to consider a relevant factor that should have been given significant weight, (2) considers and gives significant weight to an irrelevant or improper factor, or (3) considers all proper factors, and no improper [factors] ... but ..., in weighing those factors, commits a clear error of judgment." *First Mercury Ins. Co. v. Excellent Computing Distribs., Inc.*, 648 Fed.Appx. 861, 865 (11th Cir. 2016) (alterations in original; internal quotation marks and citation omitted).

*Mid-Continent Cas. Co. v. Northstar Homebuilders, Inc.,* 297 F. Supp. 3d 1329, 1334 (S.D. Fla. 2018).

Agile says it "is seeking the resolution of a purely legal question: whether Jenkins is the alter ego of [Venture Plus and Travel Plus] for purposes of piercing the corporate veil." ECF No. 70 at 7. If that is correct, then the allegations in the Complaint are inadequate. The Declaratory Judgment Act is not for the purpose of adjudicating past conduct. *See, e.g., Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC,* 650 F. Supp. 2d 1213, 1230-31 (S.D. Fla. 2009). At best, the Complaint describes the relationship among Mr. Jenkins, Venture Plus, and Travel Plus in the summer of 2023. It does not provide a factual basis to evaluate whether Mr. Jenkins is presently the alter ego of these entities.

In any event, I recommend the District Court exercise its discretion to dismiss Count VII. Counts I and II fully resolve the controversy between the parties and

provide full relief to Agile. They give Agile a judgment against both corporations and Mr. Jenkins individually. A finding of alter ego liability does not enhance Agile's ability to collect on those judgments or otherwise enforce its rights.

### H. Punitive Damages

Agile's request for punitive damages should be denied. Under Florida law, punitive damages are not available for breach of contract. *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.,* 687 So. 2d 821, 822 (Fla. 1996) ("Only if a party to a contract proves a tort independent from the acts that breach the contract is the party entitled to recover punitive damages."). And, as explained above, Agile is entitled to default judgment only on its breach of contract claims.

Even if punitive damages could be considered, they should not be awarded. The Complaint says, "Defendants are liable for punitive damages pursuant to Florida Statute §768.62, Florida Statute [sic], for their willful reckless disregard of others, to unjustly and unlawfully enrich themselves, at the expense of Agile." ¶111. It continues, "Defendants' unlawful, misleading, and deceptive business practices for the purpose of economic gain at the expense of others is reckless conduct that constitutes malice and fraud and evinces a conscious or reckless indifference to the rights and safety of others, including Agile and its clientele, which warrants the imposition of punitive damages against Defendants." ¶112. The relevant part of the Prayer for Relief asks the Court to "[a]ward punitive damages in an amount to be determined at trial." ECF No. 1 at 16.

I first note that there is no Florida Statute §768.62. It appears Agile meant to

cite Florida Statute §768.72:

> A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. As used in this section, the term:
>
> (a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.
>
> (b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

Florida's pattern jury instruction 503.2 explains:

> "Clear and convincing evidence" is evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief or conviction, without hesitation, about the matter in issue.
>
> . . .
>
> In determining the amount of punitive damages, if any, to be assessed, you should consider the following:
>
> (1).   the nature, extent and degree of misconduct and the related circumstances, including the following:
>
> (A).   whether the wrongful conduct was motivated solely by unreasonable financial gain;
>
> (B).   whether the unreasonably dangerous nature of the conduct, together with the high likelihood of injury resulting from the conduct, was actually known by the defendant
>
> (C).   whether, at the time of loss, defendant had a specific intent to harm [plaintiff] and the conduct of defendant did in fact harm [plaintiff];
>
> (2).   the financial resources of defendant.

> However, you may not award an amount that would financially destroy defendants.

The well-pled allegations in the Complaint do not present clear and convincing evidence that punitive damages are warranted. This appears to be a run-of-the-mill financial fraud. There is no evidence that it was particularly egregious or had a material effect on Agile's financial stability. In any event, the record lacks any evidence of defendants' financial condition and (therefore) whether punitive damages would financially destroy them. In short, the amount of any award of punitive damages would be purely speculative. For all these reasons, the request for punitive damages should be denied.

## I. *Compensatory Damages, Fees, and Costs*

Defendants have presented uncontradicted evidence that the principal amount advanced under the PFA was $221,417.82. ECF No. 61-1 ¶10. The PFA also calls for late fees of "5% of the installment amount due, or the maximum allowable by state law" and for default interest at "the maximum rate permitted by law from the date of default until the balance is paid in full." ECF No. 1-5 at 3 ¶¶11, 12. And, the Guaranty Agreement says Mr. Jenkins is liable for any amounts owed under the PFA. ECF No. 1-6 at 2. Agile declared a default and demanded full payment under the PFA on October 27, 2023. ECF No. 1-8 at 2.

In addition to repayment of principal, Agile is entitled to interest and late fees. Agile asks for prejudgment interest under Florida Statute §55.03. ECF No. 1 at 16, ¶E; ECF No. 61-1 ¶11.

"Pre-judgment interest is an element of damages and, when a verdict liquidates a party's out-of-pocket loss, he is entitled as a matter of law to recover pre-judgment interest from the date of the loss." *Adam v. Versailles Sur La Mer Condo.,* 973 So. 2d 466, 467 (Fla. Dist. Ct. App. 2007) *(citing Argonaut Ins. Co. v. May Plumbing Co.,* 474 So. 2d 212 (Fla. 1985)).

For a default on a loan contract, prejudgment interest is allowed "from the date that the debt is due." *Lumbermens Mut. Cas. Co. v. Percefull*, 653 So. 2d 389, 390 (Fla. 1995). Florida Statute §55.03 supplies the rate of prejudgment interest unless the contract specifies its own rate. Fla. Stat. §687.01 ("In all cases where interest shall accrue without a special contract for the rate thereof, the rate is the rate provided for in §55.03.") Here, the contract calls for default interest at "the maximum rate permitted by [Florida] law." For a loan of less than $500,000 that rate is 18% per annum simple interest. Fla. Stat. §687.03(1)

Agile is also contractually entitled to its reasonable attorney's fees and collection costs. *See* ECF Nos. 1-5 at 3 (Agent or Broker Representations and Warrantees); 1-6 at 2. Agile asks for $20,824 in fees and $1,013.80 in costs. ECF No. 78-1. I find the fees and costs sought to be reasonable.

## V.      RULE 54(b)

This Report and Recommendation resolves all of Agile's claims. Dutta's crossclaims against Mr. Jenkins, Travel Plus, and Venture Plus remain pending. *See* ECF Nos. 72, 76 (vacating defaults).

Federal Rule of Civil Procedure 54(b) says the Court can enter final judgment on fewer than all pending claims "only if the court expressly determines there is no just reason for delay." Fed. R. Civ. P. 54(b). The Court must "balance judicial administrative interests and relevant equitable concerns." *Ebrahimi v. City of Huntsville Bd. of Educ.,* 114 F.3d 162, 166 (11th Cir. 1997). It also must make clear findings to support the Rule 54(b) certification. *Id.*

Here, judicial administrative interests are not paramount. The primary concern is avoiding piecemeal appeals. *Id.* at 165-66. Here, the defendants have not appeared, so it is unlikely that an appeal will be filed from any final judgment. Additionally, the crossclaims present different factual and legal issues from Agile's claims. Agile dismissed its claims against Dutta. ECF No. 66. In its crossclaims, Dutta alleges that Mr. Jenkins, Travel Plus, and Venture Plus acted without Dutta's knowledge or consent. *See* ECF No. 43 at ¶19.

Finally, Agile will be unduly prejudiced by having to wait for Dutta's crossclaims to be resolved before it can execute on its judgments. That litigation is in its early stages. Dutta still has not properly served the crossclaim defendants. ECF Nos. 72, 76.

For all these reasons, I recommend that the District Court enter final judgment for Agile under Rule 54(b).

## <u>RECOMMENDATION</u>

Accordingly, this Court **RECOMMENDS** that the District Court:

1. GRANT the motion for default judgment on Counts I and II and dismiss the remaining counts.

2. Enter judgment pursuant to Fed. R. Civ. P. 54(b) on Counts I and II jointly and severally against Wayne Jenkins, TravelPlus Promotions, LLC and VenturePlus Promotions, LLC, in the amount of $ 221,417.82 plus interest at the rate of 18% per annum simple interest running from October 27, 2023.

3. Award Agile $20,824 in attorneys' fees and $1,013.80 in costs.

## <u>NOTICE OF RIGHT TO OBJECT</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable David S. Leibowitz, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 11th day of September 2025.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE